483 S.E.2d 62

**STATE of West Virginia, Appellee,**

v.

**Brian Keith HOSEA, Appellant.**

**No. 23674.**

Supreme Court of Appeals of West Virginia.

Submitted Nov. 19, 1996.

Decided Dec. 16, 1996.

**64**

Darrell V. McGraw, Jr., Attorney General, Rory L. Perry, Assistant Attorney General, for Appellee.

Richard M. Gunnoe, Zigler & Gunnoe, Hinton, for Appellant.

RECHT, Judge: [1]

The defendant, Brian Keith Hosea entered a conditional plea of guilty to murder of the second degree, as authorized by Rule 11(a)(2) of the West Virginia Rules of Criminal Procedure,[2] in the Circuit Court of Summers County. The circuit court and the State of West Virginia, through the Prosecuting Attorney of Summers County, consented to the defendant's entering a conditional plea of guilty to murder of the second degree, reserving in writing to the defendant the right to review adverse determinations of the following questions:

1. Did the circuit court err in not suppressing the defendant's confession made to the police which, according to the defendant, was made prior to being promptly presented to a judicial officer as required by W. Va.Code 49–5–8(d)? [3]

2. Did the court err in transferring the juvenile to adult jurisdiction in reliance on the confession which should have been suppressed at the transfer hearing pursuant to W. Va.Code 49–5–10? [4]

---

1. The Honorable Arthur M. Recht resigned as Justice of the West Virginia Supreme Court of Appeals effective October 15, 1996. The Honorable Gaston Caperton, Governor of the State of West Virginia, appointed him Judge of the First Judicial Circuit on that same date. Pursuant to an administrative order entered by this Court on October 15, 1996, Judge Recht was assigned to sit as a member of the West Virginia Supreme Court of Appeals commencing October 15, 1996 and continuing until further order of this Court.

2. W. Va. R.Crim. P. 11(a)(2) provides:

Conditional Pleas. With the approval of the court and the consent of the state, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right, on appeal from the judgment, to review of the adverse determination of any specified pretrial motion. A defendant who prevails on appeal shall be allowed to withdraw the plea.

3. W. Va.Code 49–5–8(d) (1994) provides, in relevant part:

A child in custody must immediately be taken before a referee or judge of the circuit court and in no event shall a delay exceed the next succeeding judicial day: Provided, That if there be no judge or referee then available in the county, then such child shall be taken immediately before any magistrate in the county for the sole purpose of holding a detention hearing.

4. W. Va.Code 49–5–10(d)(1) (1978) provides, in relevant part:

The court may, upon consideration of the child's mental and physical condition, maturity, emotional attitude, home or family environment, school experience and similar personal factors, transfer a juvenile proceeding to criminal jurisdiction if there is a probable cause to believe that ... [t]he child has committed ... the crime of

## I.

### FACTS

The events giving rise to this appeal occurred on September 18, 1994 in Hinton, West Virginia, when the defendant shot and killed the victim, Jeffrey Poole. On that date, the defendant was fifteen years of age and was charged with murder of the first degree of the victim, also age fifteen. On September 21, 1994, the State of West Virginia moved to transfer the defendant from juvenile jurisdiction to the criminal jurisdiction of the circuit court in order to charge and try the defendant as an adult within the provisions of W. Va.Code 49–5–10 (1978).[5]

The transfer hearing was conducted over a period of two days (September 19, 1994 and December 2, 1994). During the course of the hearing, the defendant's girlfriend, Michelle Gross, was a principal witness who informed the trial court that she was carrying the defendant's child at the time of the shooting. Ms. Gross testified that on September 17, 1994, she was staying at the home of Karen Gore in Hinton, when the defendant and the victim arrived together to visit her. Ms. Gross, the defendant, and the victim spent the night at Ms. Gore's home. Ms. Gross testified that on September 18, 1994, she awakened the defendant at about 11:50 a.m. and the defendant asked her if she had been talking with the victim. Ms. Gross told the defendant to ask the victim. The defendant and Ms. Gross then went into the living room where Mr. Poole was seated on the couch. When asked, the victim informed the defendant that he and Ms. Gross had "messed around." [6] The defendant then picked up a gun and shot the victim four times. The victim died as a result of these gunshot wounds.

Another witness whose testimony was heard during the transfer hearing was Michelle Gore, the sister of Karen Gore, who was visiting at her sister's home in Hinton on September 18, 1994. Michelle Gore testified that her sister, Karen, picked her up at the train station in Hinton, and the two sisters went to Karen's home, arriving sometime after 12:00 p.m. Michelle Gore stated that when she entered the house, she hugged Ms. Gross, who introduced her to the defendant and the victim, both of whom were seated on the couch in the living room. The Gore sisters then went into the kitchen, at which time they heard noises (gunshots). Michelle Gore went into the living room where she saw the defendant with a gun in his hand.

The police were promptly informed of the shooting at approximately 12:15 p.m., and Sergeant Mann, a Summers County Deputy Sheriff, arrived at the Gore residence at approximately 12:20 p.m. Sergeant Mann testified that the defendant was arrested and advised of his *Miranda*[7] rights and taken to the Summers County Sheriff's Department. Sergeant Mann contacted the defendant's mother and awaited her arrival, which occurred at approximately 2:30 p.m. Sergeant Mann then advised the defendant of his *Miranda* rights in the presence of his mother, both orally and in writing. The defendant and his mother requested time to be alone, and they spoke out of the presence of Sergeant Mann for a period of five to ten minutes, after which they both signed a form waiving the defendant's *Miranda* rights. Thereafter, the defendant made a tape-recorded statement confessing to shooting the victim four times with a .25 caliber semi-automatic handgun because his girlfriend said she had sex with the victim. During his statement, the defendant admitted that an interval of approximately ten minutes had elapsed between the time that he learned of the victim's conduct with Michelle Gross and the actual shooting.

---

murder under sections one, two and three [§§ 61–2–1, 61–2–2 and 61–2–3].

We have dispensed with consideration of personal factors relating to juveniles in cases involving first degree murder in Syllabus Point 2 of *State ex rel. Cook v. Helms,* 170 W.Va. 200, 292 S.E.2d 610 (1981).

5.   *See supra* note 4.

6.   Ms. Gross testified during the transfer hearing that she and the victim in reality had not "messed around," but that she and the victim were only trying to "tease" the defendant.

7.   *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

The trial court determined that there was probable cause that the defendant had committed murder of the first degree under W. Va.Code 61–2–1 (1991).[8]

On the 21st day of September, 1994, the defendant entered a plea of guilty to murder of the second degree,[9] conditioned upon the ability to file a petition for appeal to this Court presenting two questions, which answered favorably to the defendant would be dispositive of any adult criminal charges against him. As we noted above, the first question challenges the admission of a confession given by the defendant without a prompt presentment to a magistrate under W. Va.Code 49–5A–2 (1977)[10] and W. Va. Code 49–5–8(d) (1994).[11]

The second question, which builds on the admission of the confession, is that without the confession there existed no probable cause to transfer the defendant from juvenile jurisdiction to criminal jurisdiction.

We hold that upon close analysis, the confession was properly admitted during the transfer hearing; however, we further find that even without the confession, the trial court was not clearly wrong in finding probable cause to transfer the defendant from juvenile to adult jurisdiction, within the meaning of W. Va.Code 49–5–10 (1978).[12] *State v. Bannister*, 162 W.Va. 447, 250 S.E.2d 53 (1978); *see also* W. Va.Code 49–5–10(f) (1978).

## II.

## DISCUSSION

A. *Are the Issues Reserved for Appeal Case Dispositive and Therefore Reviewable by This Court?*

Before proceeding to the merits of the defendant's appeal, we must first address the State's contention that the two pretrial issues reserved for appeal are not reviewable by this Court because those issues are not case dispositive.

In his concurring opinion in *State v. Lilly*, 194 W.Va. 595, 461 S.E.2d 101 (1995), Justice Cleckley articulated the role and usefulness of a conditional plea agreement as authorized by W. Va. R.Crim. P. 11(a)(2).[13] Justice Cleckley commented:

Although a conditional guilty plea can only be used in limited circumstances, as done in the case *sub judice*, it spares the taxpayers and the court the expense of a potentially time consuming trial. Rule 11(a)(2) not only preserves resources, but serves the ends of justice by permitting [pleading] a defendant to preserve specific errors. In my judgment, Rule 11(a)(2) is one of our most important criminal rules and, when it is properly invoked, everyone benefits, including the public.

*State v. Lilly*, 194 W.Va. at 606, 461 S.E.2d at 112 (footnote omitted).

The State urges that we should now adopt Justice Cleckley's reasoning and hold that pretrial issues reserved for appeal should be case dispositive, assuming the defendant is successful upon review of those issues.

---

**8.** W. Va.Code 61–2–1 (1991) provides, in relevant part:

Murder by . . . any willful, deliberate and premeditated killing . . . is murder of the first degree. All other murder is murder of the second degree.

**9.** *See supra* note 8.

**10.** W. Va.Code 49–5A–2 (1977) provides:

A child who has been arrested or who under color of law is taken into the custody of any officer or employee of the State or any political subdivision thereof shall be forthwith afforded a hearing to ascertain if such child shall be further detained. In connection with any such

hearing, the provisions of article five [§ 49–5–1 et seq.] of this chapter shall apply. It shall be the duty of the judge or referee to avoid incarceration of such child in any jail. Unless the circumstances of the case otherwise require, taking into account the welfare of the child as well as the interest of society, such child shall be released forthwith into the custody of his parent or parents, relative, custodian or other responsible adult or agency.

**11.** *See supra* note 3.

**12.** *See supra* note 4.

**13.** *See supra* note 2.

Federal courts have consistently held that appellate review of a guilty plea entered pursuant to Rule 11(a)(2) is proper only when an appellate court's decision will completely dispose of the case. *United States v. Doherty*, 17 F.3d 1056, 1058 (7th Cir.1994); *United States v. Bell*, 966 F.2d 914, 915–16 (5th Cir.1992); *United States v. Yasak*, 884 F.2d 996, 999 (7th Cir.1989)(stating that conditional pleas are "allowed only when the appellate court's decision will completely dispose of the case").

In *United States v. Markling*, 7 F.3d 1309, 1313 (7th Cir.1993), the seventh circuit held that when a guilty plea is appealed, the issues to be resolved must "dispose of the case either by allowing the plea to stand or by such action as compelling dismissal of the indictment or suppressing essential evidence." *Id.* (quoting *United States v. Wong Ching Hing*, 867 F.2d 754, 758 (2nd Cir.1989) (quoting Advisory Committee Note to 1983 Amendment to Fed.R.Crim.P. 11)).

■ We are persuaded as to the wisdom of Justice Cleckley's rationale and therefore hold that before accepting a conditional plea under W. Va. R.Crim. P. 11(a)(2), the circuit court and the prosecutor must assure that the pretrial issues reserved for appeal are case dispositive and are capable of being reviewed by this Court without a full trial. This requires the circuit court to make specific findings on the record of the issues to be resolved upon appeal and a further specific finding that those issues would effectively dispose of the indictment or suppress essential evidence which would substantially affect the State's ability to prosecute the defendant as charged in the indictment.

■ We have no difficulty in finding from the record before us that Rule 11(a)(2) was properly invoked. If the defendant were to succeed in his appeal in persuading this Court that he was not properly transferred from juvenile to adult jurisdiction, then the indictment returned by the grand jury of Summers County would be void because, un-

til a juvenile is transferred to adult status, a grand jury would have no jurisdiction to return a true bill against the juvenile. Syllabus Point 2, *E.B. v. Canterbury*, 183 W.Va. 197, 394 S.E.2d 892 (1990). Therefore, review of this appeal is proper because it could be case dispositive of the appropriateness of criminal jurisdiction over the defendant.[14]

We can now move to the substantive merits of this appeal.

### B. *Admissibility of Confession*

The scope of appellate review of the admissibility of a confession typically has been discussed in terms of whether a defendant's confession is, in fact, voluntary and therefore admissible. In *State v. Farley*, we determined this Court's review analysis within the context of the voluntariness of a confession as:

This Court is constitutionally obligated to give plenary, independent, and *de novo* review to the ultimate question of whether a particular confession is voluntary and whether the lower court applied the correct legal standard in making its determination. The holdings of prior West Virginia cases suggesting deference in this area continue, but that deference is limited to factual findings as opposed to legal conclusions.

Syllabus Point 2, *State v. Farley*, 192 W.Va. 247, 452 S.E.2d 50 (1994).

There is a distinction, however, to be made between a confession that is involuntary and a confession that is obtained as a result of a delay in presenting a juvenile before a referee, circuit judge, or magistrate under W. Va.Code 49–5–8(d) (1994). Both types of confessions are inadmissible, but for different reasons:

Under W. Va.Code, 49–5–8(d), when a juvenile is taken into custody, he must immediately be taken before a referee, circuit judge, or magistrate. If there is a failure to do so, any confession obtained as a result of the delay will be invalid where it

---

14. Obviously, if we were to conclude that there was no probable cause to transfer the defendant from juvenile to adult jurisdiction, the State of West Virginia could continue to proceed against the defendant as a juvenile as authorized by W.

Va.Code 49–5–1, *et seq.* However, the residual juvenile proceedings of delinquency is significantly different than the full trial upon the adult criminal charge of murder of the first degree.

appears that the primary purpose of the delay was to obtain a confession from the juvenile.

Syllabus Point 3, *State v. Ellsworth J.R.*, 175 W.Va. 64, 331 S.E.2d 503 (1985).

■ We can now extrapolate from our standard of review in *State v. Farley* and fashion a standard of review when analyzing a confession obtained as a result of a delay in presenting the juvenile before a referee, circuit judge, or magistrate under W. Va.Code 49–5–8(d). The Court is constitutionally obligated to give plenary, independent, and *de novo* review to the ultimate question of whether a particular confession was obtained as a result of the delay in the presentment of a juvenile after being taken into custody before a referee, circuit judge, or a magistrate when the primary purpose of the delay was to obtain a confession from the juvenile. The factual findings upon which the ultimate question of admissibility is predicated will be reviewed under the deferential standard of clearly erroneous.

Having now delineated this Court's responsibility, we shall examine whether or not the trial court's decision to admit the confession during the transfer hearing was erroneous under a *de novo* standard of review.

### C. *Validity of Confession Taken Before Presentment to a Neutral Judicial Officer*

As a threshold exception to the validity of his confession, the defendant raises the failure, following being placed in custody, to be immediately taken before a neutral judicial officer as required by W. Va.Code 49–5–8(d) (1994). The defendant maintains that the primary purpose of the delay, between the time that he was taken into custody and the eventual presentment to a magistrate, was to obtain a confession. Thus, argues the defendant, his confession is invalid and should not have been admitted during the transfer hearing.

15. W. Va.Code 49–5–8 was modified in 1994, but the modified provisions are not relevant to this case. Since we assume that elected representatives know the law at the time of any amendment to a statute, it is logical to assume that the Legislature was fully aware of the *Ellsworth J.R.*

■ We first analyzed the immediate presentment requirement of W. Va.Code 49–5–8(d), measured against the validity of a confession taken prior to an immediate presentment in *State v. Ellsworth J.R.*, and crafted the following cardinal principle:

Under W. Va.Code 49–5–8(d), when a juvenile is taken into custody, he must immediately be taken before a referee, circuit judge or a magistrate. If there is a failure to do so, any confession obtained as a result of the delay will be invalid where it appears that the primary purpose of the delay was to obtain a confession from the juvenile.

Syllabus Point 3, *State v. Ellsworth J.R.*, 175 W.Va. 64, 331 S.E.2d 503 (1985).[15]

We again discussed the immediate presentment requirement for juveniles in *State v. Sugg*, 193 W.Va. 388, 456 S.E.2d 469 (1995), and we emphasized the importance of immediate presentment to a detached judicial officer and stressed the more rigorous requirements for juvenile presentments, as compared to adults, and the need to ensure that a juvenile's constitutional rights are preserved. *Id.* at 394–95, 456 S.E.2d at 475–76.

Finally, we have decided that the burden shall be upon the State to prove by a preponderance of the evidence that the primary purpose of any delay in the presentment of a juvenile, once in custody, was not to obtain a confession from the juvenile. Syllabus Point 6, *State v. Moss*, 180 W.Va. 363, 376 S.E.2d 569 (1988) (quoting Syllabus Point 5, *State v. Starr*, 158 W.Va. 905, 216 S.E.2d 242 (1975) (holding that the State has the burden to prove the voluntariness of a confession by a preponderance of the evidence)).

■ When we apply these various principles and standards to the findings of the trial court and upon review of the record, we observe that: (1) there was a substantial delay between the time the defendant was taken into custody and the time he was pre-

opinion, and agreed with its interpretation. *See State ex rel. Smith v. Maynard*, 193 W.Va. 1, 8–9, 454 S.E.2d 46, 53–54 (1994) (quoting *Cannon v. University of Chicago*, 441 U.S. 677, 696–97, 99 S.Ct. 1946, 1957–58, 60 L.Ed.2d 560 (1979)).

sented to a magistrate in Summers County; (2) prior to the time the defendant was presented before the magistrate in Summers County, a statement was taken from the defendant in which he described what occurred during the critical times on September 18, 1994; (3) the statement was obtained from the defendant after he had an opportunity to confer in person with his mother and after he was advised of and waived his rights to which he was entitled under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Building upon these factual predicates, the issue to address is whether the primary purpose for the delay between the time the defendant was taken into custody and the time of his presentment to a magistrate was to obtain a confession from the defendant.

The arresting officer, Sergeant Mann, provided three reasons why he did not immediately present the defendant to a neutral judicial officer. First, Sergeant Mann testified he did not know the extent of the victim's injuries, and; second, Sergeant Mann had not confirmed the identity of the victim; and, third, Sergeant Mann wanted to notify the defendant's mother that the defendant was in custody and physically located in the Office of the Sheriff of Summers County. In regard to this latter reason, the following colloquy occurred during the transfer hearing:

Q. What was your purpose in taking him to the Summers County Sheriff's Department?

A. Sir, my intentions were two-fold. One, to press a charge against him and possible detainment; and two, to contact his mother to come forward so I could possibly get a statement off of him with his mother present.

■ While we are bothered by one of the reasons given by Sergeant Mann as to why there was a delay in presenting the defendant to a neutral judicial officer (a desire to contact the defendant's mother so that a statement could be obtained from the defendant),[16] the additional reasons why the delay was required (learning the full extent of the victim's injuries and the victim's identification) convinces us by a preponderance of the evidence that the primary reason for delay was not to obtain a confession. Accordingly, in our *de novo* review of the trial court's admission of the defendant's confession and the factual predicates explaining the reason between the delay in presenting the defendant before a neutral judicial officer, we cannot conclude that any of the factual predicates were clearly erroneous and would agree with the trial court as a matter of law that the confession was admissible since it was not a result of delay where the primary purpose of the delay was to obtain a confession from the defendant.[17]

### D. *Was There Probable Cause to Transfer the Defendant from Juvenile to Adult Jurisdiction Under W. Va. Code 49–5–10?*

As part of his conditional plea of guilty to murder of the second degree, the defendant preserved for appellate review the ultimate question of whether there was probable cause to believe that he committed the crime of murder. The defendant was transferred from a juvenile proceeding to criminal jurisdiction by application of W. Va. Code 49–5–

---

16. The presence of a parent during interrogation may be a prerequisite to the validity of a confession under W. Va. Code 49–5–8(d) ("the ... magistrate shall inform the child of his or her right to remain silent ..., and no interrogation shall be made without the presence of a parent or counsel"); *but see* Syllabus Point 3, *State v. Sugg*, 193 W. Va. 388, 456 S.E.2d 469 (1995). However, having a parent present does not dispense with the requirement of immediately presenting a juvenile to a neutral judicial officer under W. Va. Code 49–5–8(d) (requiring that "[a] child in custody must be taken before a referee or judge of the circuit court"). These are mutually exclusive mandates, and satisfaction of one does not dispense with the requirement of the other.

17. Once a determination is made that the confession was not invalid under an *Ellsworth J.R.* analysis, it is not difficult for us to conclude that the State has also proven, by a preponderance of the evidence, that the second part of an analysis of the admission of a confession (*e.g.*, "was it voluntary?") was also satisfied. This record is replete with more than sufficient evidence that, following the receipt and waiver of his *Miranda* warnings and in the presence of his mother, the defendant voluntarily confessed his participation in the shooting of the victim.

10(d)(1) (1978), which provides in relevant part:

> The court may, upon consideration of the child's mental and physical condition, maturity, emotional attitude, home or family environment, school experience and similar personal factors, transfer a juvenile proceeding to criminal jurisdiction if there is a probable cause to believe that ... the crime of murder under sections one, two and three [§§ 61–2–1, 61–2–2 and 61–2–3].[18]

The decision which shapes the direction for the transfer from juvenile proceedings to criminal jurisdiction is *State ex rel. Cook v. Helms:*

> When a court finds that there is probable cause to believe that a juvenile has committed one of the crimes specified in *W. Va.Code,* 49–5–10(d)(1) (treason, murder, robbery involving the use or presenting of deadly weapons, kidnapping, first-degree arson, and first-degree sexual assault), the court may transfer the juvenile to the court's criminal jurisdiction without further inquiry.

Syllabus Point 2, in part, *State ex rel. Cook v. Helms,* 170 W.Va. 200, 292 S.E.2d 610 (1981).

We have defined "probable cause" as:

> Probable cause for the purpose of transfer of a juvenile to adult jurisdiction is more than mere suspicion and less than clear and convincing proof. Probable cause exists when the facts and circumstances as established by probative evidence are sufficient to warrant a prudent person in the belief that an offense has been committed and that the accused committed it.

Syllabus Point 1, *In re Moss,* 170 W.Va. 543, 295 S.E.2d 33 (1982).

If a court finds that there is probable cause to direct a transfer of any juvenile proceeding to criminal jurisdiction, then the court is required to make findings of fact and conclusions of law upon which its decision is based. W. Va.Code 49–5–10(e) (1978). Fail-

ure to set forth findings and conclusions will void a transfer order. Syllabus Points 2 & 3, *State ex rel. E.D. v. Aldredge,* 162 W.Va. 20, 245 S.E.2d 849 (1978); *In re Moss,* 170 W.Va. 543, 550–51, 295 S.E.2d 33, 41 (1982).

If, however, a court lacks the requisite probable cause to transfer a child to adult jurisdiction, the child will remain in the jurisdiction of the juvenile court. *E.B. v. Canterbury,* 183 W.Va. 197, 394 S.E.2d 892 (1990) (holding at Syllabus Point 2, in part, that "[u]ntil a juvenile is transferred to adult status, a grand jury has no jurisdiction to return a true bill against him").

The overarching theme of the defendant's challenge to the trial court's decision to transfer the juvenile proceedings to a criminal jurisdiction is that the facts and circumstances, as established by probative evidence, are not sufficient to warrant a prudent person to believe that an offense has been committed and that the defendant committed the offense. In short, there was no probable cause. The attack is mounted in a two-tiered fashion: the first is an overall challenge to the absence of sufficient probative evidence to warrant a finding of probable cause of murder of the first degree, and the second is the reliance by the trial court on the defendant's confession, which he claims was invalid. As we have previously discussed, we have found that not only was the confession valid, but it was also voluntarily made. Accordingly, our only inquiry at this time is whether or not there was sufficient probative evidence to warrant the trial court's belief that the offense of murder of the first degree had been committed and that the defendant committed that offense.

The evidence upon which the trial court made a finding of probable cause was: (1) the defendant's statement that approximately ten minutes lapsed between the time that he discovered the "relationship" between Ms. Gross and the victim, thus allowing a sufficient period of time to suppress the passion of the moment of learning of his girlfriend's

---

18. The statute permits a transfer from juvenile to criminal jurisdiction upon a finding of probable cause that a juvenile has committed the crimes of murder of the first and second degree. The trial court determined there was probable cause to believe that the defendant committed the crime of murder in the first degree upon a finding of premeditation.

infidelity; (2) Ms. Gore's testimony that when she arrived at her sister's home, the defendant and the victim were both sitting on the couch without demonstrating any overt animosity that was perceptible to her; (3) that Ms. Gore did not observe any guns and that there were the usual pleasantries exchanged during the introduction; (4) after Ms. Gore left the presence of the defendant and the victim, she went into another room before hearing the gunfire; and (5) the testimony of Ms. Gross that she witnessed the defendant shooting the victim.

The circuit court found that there was from all of this evidence sufficient indication of premeditation that would overcome any chance of provocation which might reduce the charge from murder to manslaughter. As we analyze all of the evidence introduced during the transfer hearing and apply a clearly wrong standard of review, we agree with the decision of the trial court that there are sufficient facts and circumstances established by probative evidence to warrant a prudent person to believe that murder of the first degree had been committed and that the defendant committed that crime. We are constrained to say that the testimony of Michelle Gore alone would be sufficient to warrant a prudent person to believe that the defendant had sufficient time to form the necessary intent to commit the crime of first degree murder. The statement of the defendant that a period of ten minutes elapsed between the time that he learned of the victim's activity with his girlfriend would elevate the proof to clear and convincing, which is not necessary for a probable cause finding.

### III.

### CONCLUSION

We find no error and, therefore, affirm the trial court's decision to admit the confession made by the defendant prior to the time that he was presented before a neutral judicial officer, as well as the finding of probable cause that the defendant committed the crime of murder of the first degree sufficient to transfer the defendant from a juvenile proceeding to adult jurisdiction. We therefore find, upon appellate review of the questions presented pursuant to W. Va. R.Crim. P. 11(a)(2), that the plea of murder in the second degree should be affirmed.

Affirmed.