624 S.E.2d 917

**WEST VIRGINIA DEPARTMENT OF HEALTH AND HUMAN RESOURCES, BUREAU FOR CHILD SUPPORT ENFORCEMENT, Petitioner,**

v.

**Kimberly SMITH, Respondent.**

No. 32697.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 11, 2005.

Decided Dec. 2, 2005.

481

Kimberley D. Bentley, West Virginia Department of Health & Human Resources, Charleston, Paul Cooley, III, Garrett M. Jacobs, Bureau for Child Support Enforcement, Huntington, for Petitioner.

Kimberly Smith, Huntington, Respondent, Pro se.

STARCHER, J.:

The Circuit Court of Cabell County presents three certified questions to this Court relating to the jurisdiction of a family court to establish a parent's support obligation for a child, when the child is also the subject of an abuse or neglect proceeding in the circuit court. We are asked to decide whether in such cases the authority to impose a child support obligation lies in the circuit court or in the family court.

As set forth below, we find that jurisdiction to establish a child support obligation lies solely with the circuit court that is adjudicating, or has adjudicated, the custody and decision-making responsibility for the child as a result of an abuse or neglect petition.

## I.

### Facts & Background

The three certified questions in this case concern the child support obligation of a parent, whose children have been placed into the custody of the Department of Health and Human Resources as a result of an abuse or neglect proceeding filed in a circuit court, all pursuant to Chapter 49 of the *West Virginia Code*. The questions essentially ask us to resolve a single, jurisdictional question: between a circuit court and a family court, which court should calculate and enforce the parent's child support obligation?

On June 30, 2003, the Department of Health and Human Resources ("the Department") filed a petition in the Circuit Court of Cabell County alleging that the four children of Kimberly Smith had been abused or neglected. Pursuant to a circuit court order, the children were temporarily removed from Ms. Smith's custody and placed into foster care. After several hearings, the circuit court concluded in an order dated June 7, 2004 that clear and convincing evidence of abuse and neglect had been presented and terminated Ms. Smith's parental rights to the children. The Department was granted permanent physical and legal custody of the children, and they were subsequently placed with foster families.

While the children were in temporary foster care pursuant to the circuit court's order, on February 11, 2004, the Department initiated a separate civil action by filing a new petition in the Family Court of Cabell County seeking to establish a child support obligation for Ms. Smith. The Department alleged in the petition for child support that it was "currently paying expenses for the minor children" and that Ms. Smith "owes a duty of support to the children which she is not meeting." The Department therefore requested that the family court enter an order requiring Ms. Smith "to pay such sum or sums of money sufficient for the support and maintenance of the minor children, in accordance with the child support formula, while the children are in foster care[.]"

The family court, however, refused to exercise jurisdiction over the Department's petition for child support. In an order dated June 11, 2004, the family court stated:

The Family Court does not have jurisdiction in the present case.... Jurisdiction for establishing the support obligation lies exclusively with the [Circuit] Court that Ordered the placement of the child(ren).

The family court's order dismissed the Department's petition for child support.

The Department appealed the family court's dismissal order to the circuit court. The Department argued to the circuit court that, as a general proposition, it was experiencing difficulty establishing child support obligations in abuse and neglect cases because family courts and circuit courts were in disagreement concerning which court could or should establish the support obligation. As the Department stated:

[T]he Family Court dismissed the action holding that the Family Court lacks jurisdiction to establish child support and that jurisdiction lies wholly with the Circuit Court which removed the child from the custody of the parent....

The [Department] has previously appealed the same ruling of the Family Court [of Cabell County] regarding jurisdiction in eleven (11) other cases. In each of the appeals assigned to the Honorable Alfred E. Ferguson, the order of dismissal by the Family Court was *affirmed* ... The ap-

peals assigned to the Honorable Dan O'Hanlon were *remanded* to the Family Court for entry of a support order....

... [The Department] is experiencing difficulty establishing the federally-mandated child support obligation in Chapter 49 [abuse and neglect] cases as the split of decision regarding jurisdiction is typical across the State.

The Department therefore asked the circuit court to certify questions to this Court to clarify the procedure that the Department, family courts and circuit courts should pursue to establish a parent's child support obligation when an abuse or neglect petition has been filed.

In an order dated December 15, 2004, the circuit court certified the following questions to this Court:[1]

Certified Question One:

Does the Family Court have jurisdiction to establish child support if the same child is also the subject of a pending proceeding or order under Chapter 49 of the West Virginia Code, when no order of the Circuit Court addresses child support?

Answer of the Circuit Court: Yes.

Certified Question Two:

May the Circuit Court transfer jurisdiction to the Family Court to calculate child support in a proceeding under Chapter 49 of the West Virginia Code by administrative order en masse?

Answer of the Circuit Court: No.

Certified Question Three:

May the Circuit Court transfer jurisdiction to the Family Court to calculate child support in a proceeding under Chapter 49 of the West Virginia Code by administrative order on a case by case basis?

Answer of the Circuit Court: No.

## II.

### *Standard of Review*

██ "The appellate standard of review of questions of law answered and certified by a circuit court is *de novo.*" Syllabus Point 1, *Gallapoo v. Wal–Mart Stores, Inc.*, 197 W.Va. 172, 475 S.E.2d 172 (1996).

## III.

### *Discussion*

██ It is well established that this Court has the authority to reformulate certified questions.

When a certified question is not framed so that this Court is able to fully address the law which is involved in the question, then this Court retains the power to reformulate questions certified to it under both the Uniform Certification of Questions of Law Act found in *W.Va.Code*, 51–1A–1, *et seq.* and *W.Va.Code*, 58–5–2 [1967], the statute relating to certified questions from a circuit court of this State to this Court.

Syllabus Point 3, *Kincaid v. Mangum*, 189 W.Va. 404, 432 S.E.2d 74 (1993).

After considering the record and the briefs and arguments of the Department, we believe that the circuit court's three certified questions should be reformulated and distilled down into this single question:

If a child is either the subject of an abuse or neglect proceeding in a circuit court, or the subject of a circuit court order affecting the custodial or decision-making responsibility for the child pursuant to Chapter 49 of the *West Virginia Code*, does the circuit court have exclusive jurisdiction to establish a child support obligation for that child?

As we discuss below, we believe that the answer to this question is "Yes."

We begin our analysis of this question by looking to the historical purpose behind the creation of the family court system, and its relationship to the circuit courts.

In October 1997 this Court entered an order that established the "Commission on

---

**1.** This Court recently received a *Report on the Overlap of Child Abuse and Neglect Cases in Family and Circuit Courts* from the West Virginia Court Improvement Oversight Board. The report identifies four problematic areas of overlap between circuit courts and family courts in the context of abuse and neglect actions, and suggests solutions for the Court, the Legislature, the Executive and other individuals to pursue, so as to more efficiently address the needs of abused and neglected children. One of those four areas is, coincidentally, encompassed by the questions certified in the instant case.

the Future of the West Virginia Judicial System." The Commission was charged with examining the State court system and proposing "structural, organizational, and procedural changes that will ensure a just, effective, responsive, and efficient court system into the next century." One of the many areas examined by the Commission was the inefficient, piecemeal approach taken by the then-existing court system in addressing legal issues concerning parents and children.

After extensive public hearings and deliberations, the Commission determined—as the law stood in 1998—that families entering the court system faced a "fragmented and duplicative" system:

> [A] family in crisis could encounter five different decision makers in the course of attempting to resolve its problems: a magistrate, to hold hearings on a domestic violence petition; a family law master, to hear evidence on a divorce; a circuit judge, to conduct an abuse and neglect proceeding; a different circuit judge to conduct a delinquency proceeding regarding the behavior of one of the children; and a panel of county commissioners to conduct a proceeding regarding the contested legal guardianship of a minor.

*Report of the Commission on the Future of the West Virginia Judicial System* at 34 [1998]. The Commission recognized that judicial decision makers, acting without coordination, were likely to issue inefficient and/or conflicting orders:

> [W]hen there is no coordination between different segments of the court system, it is possible that a judge hearing an abuse and neglect case may not be aware of a pending divorce, a disputed non-testamentary legal guardianship, a juvenile delinquency proceeding, and/or a recent domestic violence petition. This lack of integration and consolidation does not

serve the best interest of the families, interferes with the ability of the system to provide a quality resolution, and does not make efficient use of judicial resources. *Id.*

To resolve this problem, in December 1998 the Commission proposed that the Legislature establish a "unified family court." The Commission, relying upon studies by the American Bar Association and upon an examination of family court systems devised by twenty-five other states, proposed a "one judge, one family" system. Under this system, one judicial officer would be empowered to make decisions concerning families, parents and children. The unified family court system crafted by the Commission contemplated that one, specially-trained judge [2] would have "comprehensive jurisdiction of all family law cases, including juvenile matters," and that all cases pertaining to one family— such as divorce, domestic violence, paternity, or abuse and neglect—would be assigned to that judge. *Id.* at 34–37, 432 S.E.2d 74.

The Legislature responded to the Commission's recommendations by creating the current family court system. The Legislature did not, however, wholly adopt the recommended "one judge, one family" concept and did not establish the family court system as a "unified court" with the powers necessary for resolution of all family law matters. Instead, the system adopted by the Legislature makes clear that "[a] family court is a court of limited jurisdiction." *W.Va.Code,* 51–2A–2(d) [2004]. We interpreted this language in *State ex rel. Silver v. Wilkes,* 213 W.Va. 692, 584 S.E.2d 548 (2003) to mean that the Legislature established the family courts as courts of limited jurisdiction that are "inferior" to the circuit courts.[3]

The Legislature did consolidate jurisdiction over many family law issues into the

---

2. The Commission recommended that

... Unified Family Court judges gain office in the same manner, and have the same status, pay, and benefits as circuit judges....

Other states with Unified Family Courts have determined that equal stature for Unified Family Court Judges and adequate additional support personnel are *absolutely essential* to the success of this plan.

*Report of the Commission on the Future of the West Virginia Judicial System* at 35.

3. As we stated in Syllabus Point 4 of *State ex rel. Silver v. Wilkes:*

Pursuant to Article VIII, Sections 6 and 16 of the West Virginia Constitution, W.Va.Code § 51–2–2 (1978), and the Family Court statutes, W.Va.Code §§ 51–2A–1 to 23 (2001), family courts are courts of limited jurisdiction and are inferior to circuit courts. Family courts are, therefore, subject to both the appellate jurisdiction and the original jurisdiction of the circuit courts in this State.

original jurisdiction of the family courts. Following the recommendations of the Commission, family courts now have jurisdiction over divorces—including the power to dissolve a marriage, equitably distribute marital property, and determine child and spousal support obligations [4]—and have contempt power to enforce any family court decrees.[5] Family courts also have jurisdiction over actions seeking child support, when the parents have never married; [6] over actions to establish paternity; [7] over civil domestic violence cases seeking a protective order; [8] and over infant guardianship cases.[9]

But not all areas of family law were placed before the family courts. One significant area of family law discussed by the Commission remains within the sole jurisdiction of the circuit courts: child abuse or neglect proceedings under Chapter 49 of the *West Virginia Code.*

In the instant case we are asked to determine whether, and to what extent (if any),

family courts may exercise jurisdiction over a parent's child support obligation, when the child is subject to an abuse or neglect proceeding in the circuit court. To answer this question we must examine the various legislative enactments delineating the jurisdiction of the family and circuit courts in the context of abuse or neglect cases.

*W.Va.Code,* 49–6–1 [2005] clearly states that an abuse or neglect petition may only be filed in "the circuit court in the county in which the child resides[.]" Likewise, the statute setting forth the jurisdiction of the family courts, *W.Va.Code,* 51–2A–2(c) [2004], states that when an abuse or neglect petition is filed in a circuit court, and "an action for divorce, annulment or separate maintenance" is at the same time pending in a family court, the family court must defer to the circuit court. As the statute states, any orders of the circuit court "shall supercede and take precedence over an order of the family court respecting the allocation of custodial and decision-making responsibility for the child between the parents." [10]

> If an action for divorce, annulment or separate maintenance is pending and a petition is filed pursuant to the provisions of article six, chapter forty-nine of this code alleging abuse or neglect of a child by either of the parties to the divorce, annulment or separate maintenance action, the orders of the circuit court in which the abuse or neglect petition is filed shall supercede and take precedence over an order of the family court respecting the allocation of custodial and decision-making responsibility for the child between the parents. If no order for the allocation of custodial and decision-making responsibility for the child between the parents has been entered by the family court in the pending action for divorce, annulment or separate maintenance, the family court shall stay any further proceedings concerning the allocation of custodial and decision-making responsibility for the child between the parents and defer to the orders of the circuit court in the abuse or neglect proceedings.

We note that this provision regarding the jurisdiction of the family court appears to apply only when a "divorce, annulment or separate maintenance" action has been filed between the parents of a child who is the subject of a later abuse or neglect petition. The statute is silent regarding the course of action to be taken when any other type of action—such as a paternity action or an action to establish child support between unmarried individuals—is filed between the parents of the child.

---

**4.** *W.Va.Code,* 51–2A–2(a)(1) [2004] states:
   The family court shall exercise jurisdiction over ... All actions for divorce, annulment or separate maintenance brought under the provisions of article three, four or five, chapter forty-eight of this code[.]
   *W.Va.Code,* 51–2A–2(a)(8) and (9) permit a family court judge to enter temporary orders in such proceedings, and to later modify any orders entered.

**5.** *See W.Va.Code,* 51–2A–2(a)(10) [2004], giving family courts authority "to enforce an order of spousal or child support or to enforce an order for a parenting plan or other allocation of custodial responsibility or decision-making responsibility for a child," including through civil contempt proceedings. *See also, W.Va.Code,* 51–2A–9 [2001] (setting forth the contempt powers of a family court judge).

**6.** *See W.Va.Code,* 51–2A–2(a)(2) [2004].

**7.** *See W.Va.Code,* 51–2A–2(a)(3) [2004].

**8.** *W.Va.Code,* 51–2A–2(a)(12) [2004] gives family courts jurisdiction over "[a]ll final hearings in domestic violence proceedings[.]"

**9.** *W.Va.Code,* 51–2A–2(a)(17) [2004] gives family courts jurisdiction over "[a]ll proceedings relating to the appointment of guardians or curators of minor children ... exercising concurrent jurisdiction with the circuit court."

**10.** *W.Va.Code,* 51–2A–2(c) [2004] states:

The instant case arises, however, because of what the family court jurisdiction statute regarding abuse or neglect jurisdiction *does not* say. *W.Va.Code,* 51–2A–2(c) places limitations upon the family court's "allocation of custodial and decision-making responsibility;" it says nothing of the family court's power to create and enforce a child support obligation. Concerning that power, *W.Va.Code,* 51–2A–2(a)(2) and (10) state:

> The family court shall exercise jurisdiction over the following matters: . . .
>
> (2) All actions to obtain orders of child support . . .; . . .
>
> (10) All actions brought, including civil contempt proceedings, to enforce an order of spousal or child support. . . .

Relying upon these two subsections, the Department argues that family courts retain jurisdiction to determine a parent's support obligation for a child who is subject to an abuse or neglect petition. The Department asserts that it may therefore turn to the family courts to obtain an order for the support of a minor child whenever a parent is obligated to support the child and is failing to do so[11]—even when a circuit court has placed that child in the custody of the Department as a result of the filing of an abuse or neglect petition.

After carefully examining the statutory scheme concerning the establishment of child support obligations in abuse or neglect cases, we reject the Department's interpretation of *W.Va.Code,* 51–2A–2. We believe that when an abuse or neglect petition has been filed, the family courts are divested of jurisdiction to establish a support obligation for the child and that the duty to establish a support obligation lies solely with the circuit court.

The circuit court's duty to impose a child support obligation upon hearing an abuse or neglect petition is found in *W.Va.Code,* 49–7–5 [1936]. That statute states, in part:

If it appears upon the hearing of a petition under this chapter that a person legally liable for the support of the child is able to contribute to the support of such child, the court or judge shall order the person to pay the state department, institution, organization, or private person to whom the child was committed, a reasonable sum from time to time for the support, maintenance, and education of the child.

This statute—adopted in 1936—indicates that a circuit court "shall" require a parent to pay support for a child to the Department if the parent "is able to contribute to the support of such child." The determination of whether and how much a parent can contribute to the support of a child is not, however, a visceral, unfettered decision for the circuit court; rather, the existence and amount of a child support obligation under *W.Va.Code,* 49–7–5 must now be computed in light of recent statutes which pertain to the calculation of a support obligation. *See* Syllabus Point 12, *Vest v. Cobb,* 138 W.Va. 660, 76 S.E.2d 885 (1953) ("The Legislature, when it enacts legislation, is presumed to know of its prior enactments."); Syllabus Point 5, *State v. Snyder,* 64 W.Va. 659, 63 S.E. 385 (1908) ("A statute should be so read and applied as to make it accord with the spirit, purposes and objects of the general system of law of which it is intended to form a part; it being presumed that the legislators who drafted and passed it were familiar with all existing law, applicable to the subject-matter, whether constitutional, statutory or common, and intended the statute to harmonize completely with the same and aid in the effectuation of the general purpose and design thereof, if its terms are consistent therewith.").

The current statutory scheme regarding child support obligations requires judges—family court or circuit court—to use the *Guidelines for Child Support Awards* found

---

**11.** The Department also cites to *W.Va.Code,* 48–14–101 [2001] as its authority to initiate a separate action in family court to establish a child support obligation when an abuse or neglect petition regarding the child is pending in circuit court. The statute states:

> An action may be brought in family court to obtain an order for the support of a minor child when:
>
> (1) The child has a parent and child relationship with an obligor;

> (2) The obligor is not meeting an obligation to support the child;
>
> (3) An enforceable order for the support of the child by the obligor has not been entered by a court of competent jurisdiction; and
>
> (4) There is no pending action for divorce, separate maintenance or annulment in which the obligation of support owing from the obligor to the child is at issue.

in Article 13 of Chapter 48 to calculate the existence and amount of a parent's child support obligation. The *Guidelines for Child Support Awards* are not limited to being applied only by family courts, but are to be used by *any* court that is assessing *any* child support obligation. Specifically, *W.Va.Code*, 48–13–701 [2001] states that "[t]he guidelines in child support awards apply as a rebuttable presumption to *all* child support orders established or modified in West Virginia." (Emphasis added.) The statute mandates that the *Guidelines* "be applied to all actions in which child support is being determined including ... foster care, ... public assistance, nonpublic assistance and support decrees arising despite nonmarriage of the parties." [12]

The *Guidelines for Child Support Awards* were designed by the Legislature to ensure uniformity in child support awards, and to increase predictability for parents, children, and "other persons who are directly affected by child support orders"—which we interpret to include the Department of Health and Human Resources in the context of an abuse and neglect petition. It is therefore presumed that any order entered by a court in accordance with the *Guidelines* "is the correct amount of child support to be awarded." *W.Va.Code*, 48–13–101 [2001].[13] The *Guidelines* may, however, be disregarded or adjusted to "accommodate the needs of the child or children or the circumstances of the parent or parents" only if the court makes specific findings that the use of the *Guidelines* is inappropriate. *W.Va.Code*, 48–13–702 [2001].

Furthermore, "to ensure greater uniformity" and "to increase predictability" as contemplated by the Legislature in enacting the *Guidelines*, orders concerning child support obligations must be entered promptly. When support orders are not entered at the same time that the circuit court alters the allocation of custodial and decision-making responsibility for the child, the child's parents and the Department are deprived of the ability to order their affairs. If the circuit court gives custody of the child to one parent or another responsible person in the abuse or neglect action, then in the absence of a support obligation upon the non-custodial parent, the custodial parent or responsible person must fall back on the resources of the Department. If the court places the child into the sole custody of the Department, in the absence of a support obligation, taxpayers must unfairly foot the entire bill. In either case, when a court delays the calculation of a support obligation, the parents may be unfairly surprised to be forced to pay past support, education or medical expenses paid by the Department, in addition to making current, monthly support payments.

The record in this case prompts us to raise one additional issue of concern regarding the prompt resolution of child abuse or neglect actions. In 2004, the Court—through the assistance of the Court Improvement Oversight Board—issued the *Judicial Benchbook for Child Abuse and Neglect Proceedings* and issued a series of computerized forms called the *Juvenile Abuse and Neglect Information System*.[14] The *Benchbook* contains a summary of the statutes, rules, caselaw and pro-

12. *W.Va.Code*, 48–13–701 [2001] states:

The guidelines in child support awards apply as a rebuttable presumption to all child support orders established or modified in West Virginia. The guidelines must be applied to all actions in which child support is being determined including temporary orders, interstate (URESA and UIFSA), domestic violence, foster care, divorce, nondissolution, public assistance, nonpublic assistance and support decrees arising despite nonmarriage of the parties. The guidelines must be used by the court as the basis for reviewing adequacy of child support levels in uncontested cases as well as contested hearings.

13. *W.Va.Code*, 48–13–101 [2001] states:

This article establishes guidelines for child support award amounts so as to ensure greater

uniformity by those persons who make child support recommendations and enter child support orders and to increase predictability for parents, children and other persons who are directly affected by child support orders. There is a rebuttable presumption, in any proceeding before a court for the award of child support, that the amount of the award which would result from the application of these guidelines is the correct amount of child support to be awarded.

14. Both the *Benchbook* and JANIS are available on the Supreme Court of Appeals' internet website, *www.state.wv.us/wvsca*. The *Benchbook* may be downloaded or reviewed at *www.state.wv.us/wvsca/benchbook_04/cover.htm*, while the JANIS system may downloaded or accessed at *www.wvjanis.com*.

cedures in abuse and neglect cases, as well as checklists to ensure a thorough review of each case. Tied into the *Benchbook* is the *Juvenile Abuse and Neglect Information System*—better known by its initials "JAN-IS"—which is a computerized tool for judges and other practitioners to use to expedite the handling of child abuse and neglect cases. The JANIS system improves the speed and quality of judges' and attorneys' work product by automating the creation of case orders and motions. It is our understanding that many practitioners and judges are unaware of these two resources. We would suggest, in the future, that judges, attorneys, and the Department (and thereby children and their parents) would substantially benefit from the use of these resources in the adjudication of abuse and neglect cases.

■ We therefore hold that when a child is the subject of an abuse or neglect or other proceeding in a circuit court pursuant to Chapter 49 of the *West Virginia Code,* the circuit court, and not the family court, has jurisdiction to establish a child support obligation for that child.

■ When a circuit judge enters an order on an abuse or neglect petition filed pursuant to Chapter 49 of the *West Virginia Code,* and in so doing alters the custodial and decision-making responsibility for the child and/or commits the child to the custody of the Department of Health and Human Resources,

*W.Va.Code,* 49–7–5 [1936] requires the circuit judge to impose a support obligation upon one or both parents for the support, maintenance and education of the child. The entry of an order establishing a support obligation is mandatory; it is not optional.

■ Finally, any order establishing a child support obligation in an abuse or neglect action filed pursuant to Chapter 49 of the *West Virginia Code* must use the *Guidelines for Child Support Awards* found in *W.Va. Code,* 48–13–101, *et seq.*

## IV.

### *Conclusion*

The question before the Court is this:

If a child is either the subject of an abuse or neglect proceeding in a circuit court, or the subject of a circuit court order affecting the custodial or decision-making responsibility for the child pursuant to Chapter 49 of the *West Virginia Code,* does the circuit court have exclusive jurisdiction to establish a child support obligation for that child?

We answer the certified question "Yes."

Certified Question Answered.