686 S.E.2d 601

**In re RYAN B.**

**In re Caitlyn M., Carson M., and Steven M.**

Nos. 34598, 34704.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 9, 2009.

Decided Oct. 29, 2009.

Concurring Opinion of Chief Justice Benjamin Dec. 22, 2009.

Nancy C. Ulrich, Esq., Clarksburg, WV, for Appellant, Joanna F.

Linda Hausman, Esq., McNeer, Highland, McMunn and Varner, L.C., Clarksburg, WV, Guardian Ad Litem for the Minor Child, Ryan B.

Betsy Poe, Esq., Bridgeport, WV, for Appellee, William Matthew B.

John S. Lanham, Esq., Horner, WV, for Appellant, Stanley M.

Kimberly D. Bentley, Esq., Charleston, WV, Assistant General Counsel for Appellee, W.Va. Dept. of Health and Human Resources Bureau for Child Support Enforcement.

David Mirhoseini, Esq., Bridgeport, WV, Guardian Ad Litem for the Minor Children, Caitlyn M., Carson M., and Steven M.

KETCHUM, J.:

These two appeals have been consolidated because they present the same question—whether a court in an abuse and neglect proceeding may accept a voluntary relinquishment and terminate a parent's parental rights while continuing his/her obligation to pay child support for the child(ren). The two circuit court rulings below came to different conclusions, one finding that a voluntary relinquishment cuts off all parental rights and responsibilities, including the obligation to pay child support; the other finding that child support is a right unto the child which cannot be voluntarily relinquished by a parent.

After carefully reviewing the briefs, the legal authority cited and the record presented for consideration, we hold the Legislature's 2006 amendment of *W.Va.Code*, § 49-6-5(a)(6), changing the statute's "guardianship rights and/or responsibilities" language to "guardianship rights and responsibilities" was not intended to relieve parents who have their parental rights terminated in an abuse and neglect proceeding from providing their child(ren) with child support. A circuit court terminating a parent's parental rights pursuant to *W.Va.Code*, § 49-6-5(a)(6), must ordinarily require that the terminated parent continue paying child support for the child, pursuant to the *Guidelines for Child Support Awards* found in *W.Va.Code*, § 48-13-101, et seq. [2001]. If the circuit court finds, in a rare instance, that it is not in the child's best interest to order the parent to pay child support pursuant to the *Guidelines* in a specific case, it may disregard the *Guidelines* to accommodate the needs of the child if the court makes that finding on the record and explains its reasons for deviating from the *Guidelines* pursuant to *W.Va.Code*, § 48-13-702, [2001].

## I.

### *Facts & Background*

The instant appeals involve two fathers who voluntarily relinquished their parental rights, which relinquishments were accepted by the circuit courts, after abuse and neglect petitions were filed against them.

### A.

### *In re: Ryan B.*[1]

Ryan B. was born to Appellant Joanna F. on June 23, 2007. On the day he was born, a

---

1. As is our practice in cases involving sensitive matters, we use the child's initials rather than his full name to identify him. *See Marilyn H. v. Roger Lee H.*, 193 W.Va. 201, 202 n. 1, 455 S.E.2d 570, 571 n. 1 (1995).

drug screen was performed that showed both mother and child tested positive for cocaine. Joanna F. admitted to using cocaine throughout her pregnancy. On August 13, 2007, the West Virginia Department of Health and Human Resources (hereinafter "DHHR") filed a petition against Joanna F., Appellee William Matthew B., who Joanna F. identified as Ryan's biological father, and an unknown father, as paternity had not yet been conclusively established. This petition alleged that Ryan B. was a neglected and abused child and that the parties named were neglectful and abusing parents.

On September 5, 2007, Joanna F. entered into a stipulated adjudication wherein she admitted to her past drug use. Accordingly, the circuit court found her to be a neglectful parent. She subsequently participated in a treatment program, successfully completed the terms and conditions of her family case plan and the petition against her was dismissed.

On September 26, 2007, the court ordered William Matthew B. to undergo DNA testing to determine whether he was Ryan B.'s biological father. On December 14, 2007, the court ruled that the DNA test results proved that William Matthew B. was the biological father and granted him a three month preadjudicatory improvement period.

On January 11, 2008, William Matthew B. entered a voluntary relinquishment of his parental rights with the circuit court. Joanna F. objected to the relinquishment and requested that the court order William Matthew B. to pay child support until Ryan B. reaches the age of majority. On January 22, 2008, the circuit court granted William Matthew B.'s request and ordered that his parental rights be severed and terminated. On June 16, 2008, following a hearing and the submission of briefs by each of the parties and the *guardian ad litem,* the court denied Joanna F.'s motion requesting that William Matthew B. pay child support. Joanna F. now appeals the circuit court's June 16, 2008, order.

**2.** On April 2, 2008, the circuit court below converted Donna M. from a respondent parent to a

## B.

### *In re: Caitlyn M., Carson M., and Steven M.*

An abuse and neglect petition was filed against Stanley Ray M. on March 3, 2008, alleging that he sexually abused his daughter, Caitlyn M. Based on these allegations, the petition also included Stanley Ray M.'s other children, Carson M. and Steven M. The mother of these three children, Donna M., was named in the petition but no allegations of abuse were made against her.[2]

On April 2, 2008, Stanley Ray M. executed a "Voluntary Relinquishment of Parental Rights" form with regard to all three children. The circuit court below accepted Stanley Ray M.'s voluntary relinquishment and entered an order on August 5, 2008, terminating his parental rights to Caitlyn M., Carson M., and Steven M. The court also ordered that the child support obligation, previously established by the Family Court of Harrison County, continue to be in effect. It is from this order that Stanley Ray M. now appeals.

## II.

### *Standard of Review*

This Court explained in *In re Emily,* 208 W.Va. 325, 332, 540 S.E.2d 542, 549 (2000), that: "For appeals resulting from abuse and neglect proceedings, such as the case *sub judice,* we employ a compound standard of review: conclusions of law are subject to a *de novo* review, while findings of fact are weighed against a clearly erroneous standard." We also held in Syllabus Point 1 of *In the Interest of Tiffany Marie S.,* 196 W.Va. 223, 470 S.E.2d 177 (1996):

Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused

party in interest.

or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

With this standard in mind, we proceed to consider the parties' arguments.

### III.

#### Analysis

■ This issue, whether a court in an abuse and neglect proceeding may accept a voluntary relinquishment and terminate a parent's parental rights while continuing his/her obligation to pay child support ·for the child(ren), was addressed by this Court in *In re Stephen Tyler R.*, 213 W.Va. 725, 584 S.E.2d 581 (2003).[3] In that case, the Court concluded that a circuit court in an abuse and neglect proceeding had the authority to continue a father's obligation to pay child support, even though his parental rights had been terminated. The Court's conclusion was guided mainly by *W.Va.Code*, § 49-6-5(a)(6) [1998], which read, in relevant part:

> (6) Upon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future, and when necessary for the welfare of the child, terminate the parental, custodial or guardianship rights and/or responsibilities of the abusing parent and commit the child to the permanent sole custody of the nonabusing parent, if there be one, or, if not, to either the permanent guardianship of the department or a licensed child welfare agency.

The Court focused on the phrase "and/or responsibilities" and found that the "plain language of this statute affords the circuit court the options of either terminating the abusing parent's parental rights, terminating his/her responsibilities, or terminating both the parent's parental rights and responsibilities." *In re Stephen Tyler R.*, 213 W.Va. at 740, 584 S.E.2d at 596. The Court found that paying child support was a parental responsibility, and therefore concluded that a circuit court could simultaneously terminate parental rights and continue to impose child support obligations on parents whose parental rights were terminated. Three years after this case was decided, the Legislature amended *W.Va.Code*, § 49-6-5(a)(6), and changed the statute's "guardianship rights and/or responsibilities" language to "guardianship rights and responsibilities." *W.Va. Code*, § 49-6-5(a)(6) [2006],· currently reads, in relevant part:

> (6) Upon a finding that there is no reasonable likelihood that the conditions of ne-.glect or abuse can be substantially corrected in the near future and, when necessary for the welfare of the child, terminate the parental, custodial and guardianship rights and responsibilities of the abusing parent and commit the child to the permanent sole custody of the nonabusing parent, if there be one, or, if not, to either the permanent guardianship of the department or a licensed child welfare agency.

Both of the fathers who voluntarily relinquished their parental rights in the present appeals argue that this statutory change overrules this Court's holding in *In re Stephen Tyler R.*, and mandates that when a circuit court terminates a parent's parental rights it must also terminate his/her parental responsibilities, including the responsibility to pay child support. Joanna F. (Ryan B.'s mother), the DHHR and the *guardian ad litem* for Caitlyn M., Carson M., and Steven M., contend that the overall goal of the child welfare statutory scheme is to do what is in the best interest of the child(ren). They also argue that allowing these fathers to avoid

---

**3.** *In re Stephen Tyler R.* dealt with an involuntary termination of a father's parental rights, whereas the two cases presently before us involve two fathers who voluntarily relinquished their paren-

tal rights. The issue presently before us is applicable to both voluntary and involuntary relinquishments.

their child support obligations would clearly be detrimental to the child(ren) and that the Legislature could not have intended this result. In order to resolve this issue, we must examine *W.Va.Code,* § 49–6–5(a)(6) [2006], specifically, our child welfare statute generally, and our extensive case law on this issue.

When interpreting statutes promulgated by the Legislature, we first discern the objective of the enactment. " 'The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature.' Syllabus Point 1, *Smith v. Workmen's Compensation Commissioner,* 159 W.Va. 108, 219 S.E.2d 361 (1975)." Syllabus Point 6 *State ex rel. ACF Indus., Inc. v. Vieweg,* 204 W.Va. 525, 514 S.E.2d 176 (1999). In gleaning legislative intent, we endeavor to construe the scrutinized provision consistently with the purpose of the general body of law of which it forms a part.

> " 'Statutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments.' Syllabus Point 3, *Smith v. State Workmen's Compensation Comm'r,* 159 W.Va. 108, 219 S.E.2d 361 (1975)." Syllabus Point 3, *Boley v. Miller,* 187 W.Va. 242, 418 S.E.2d 352 (1992).

Syllabus Point 3, *Rollyson v. Jordan,* 205 W.Va. 368, 518 S.E.2d 372 (1999). *See also* Syllabus Point 4, in part, *State ex rel. Hechler v. Christian Action Network,* 201 W.Va. 71, 491 S.E.2d 618 (1997) ("In ascertaining legislative intent, effect must be given to each part of the statute and to the statute as a whole so as to accomplish the general purpose of the legislation." (Internal quotations and citations omitted)); Syllabus Point 2, in part, *Mills v. Van Kirk,* 192 W.Va. 695, 453 S.E.2d 678 (1994) ("To determine the true intent of the legislature, courts are to examine the statute in its entirety and not select 'any single part, provision, section, sentence, phrase or word.' Syllabus Point 3, in part, *Pristavec v. Westfield Ins. Co.,* 184 W.Va. 331, 400 S.E.2d 575 (1990).").

This effort to maintain consistency among related statutes is particularly important as legislators normally are charged with knowledge of the law in effect at the time of a statute's enactment or amendment. In this regard, "we assume that elected representatives know the law at the time of any amendment to a statute ..." *State v. Hosea,* 199 W.Va. 62, 68 n. 15, 483 S.E.2d 62, 68 n. 15 (1996).

Applying these rules of statutory construction to the statute at issue herein, we observe that the express purpose of the child welfare statute, *W.Va.Code* § 49–1–1, *et seq.,* is to "[a]ssure each child care, safety and guidance ... [s]erve the mental and physical welfare of the child ... (and) [r]ecognize the fundamental rights of children and parents." *W.Va.Code* § 49–1–1(a)(1)–(4). The plain language of the child welfare statute makes it clear that the Legislature's main goal is to assure the best interest of the child and recognize the child's fundamental rights. The statute at issue herein, *W.Va.Code,* § 49–6–5(a)(6) [2006], states that a court may terminate parental rights and responsibilities "when necessary for the welfare of the child." This phrase makes it clear that this statute is intended to serve the overall goal of the child welfare statute. Reading *W.Va.Code* § 49–1–1, *et seq.,* in *pari materia* with *W.Va.Code,* § 49–6–5(a)(6), we hold that the Legislature's 2006 amendment of *W.Va.Code,* § 49–6–5(a)(6), changing the statute's "guardianship rights and/or responsibilities" language to "guardianship rights and responsibilities" was not intended to relieve parents who have their parental rights terminated in an abuse and neglect proceeding from providing their child(ren) with child support.[4]

Had the Legislature intended to eliminate the long standing requirement that a parent, even one who voluntarily relinquishes his/her parental rights, provide financial support to his/her child, we believe it would have done so explicitly and clearly, rather than simply removing the word "or" from *W.Va.Code,* § 49–6–5(a)(6). *See Com. Dept. of Public Welfare ex. rel Hager v. Woolf,* 276 Pa.Super.

---

**4.** This holding is applicable to both voluntary and involuntary terminations. *See* footnote 3,

*supra.*

433, 437, 419 A.2d 535, 537 (1980) ("It is apparent that if the Legislature wished to eliminate the legal obligation of a parent to support a child, in the event of termination ... it would have done so clearly and explicitly, in view of the long standing recognition in our Commonwealth of a parent's liability for the support of his or her child.").

■ Further, case law from this Court as well as courts around the country [5] have held that an obligation of support is owed to a child by both of his parents until such time as the child is placed in the permanent legal custody of another guardian/parent/obligor, such as in adoption. As this Court has frequently emphasized, the best interest of the child is the polar star by which all matters affecting children must be guided. *See* Syllabus Point 7, *In re Brian D.*, 194 W.Va. 623, 461 S.E.2d 129 (1995) ("Cases involving children must be decided not just in the context of competing sets of adults' rights, but also with a regard for the rights of the child(ren)."). This Court has previously stated that child support obligations are not only responsibilities parents owe to their children, they are also rights which belong to children. "Child support is a right which belongs to the child." *Kimble v. Kimble*, 176 W.Va. 45, 49, 341 S.E.2d 420, 424 (1986), *quoting Armour v. Allen*, 377 So.2d 798, 799–800 (Fla.Dist.Ct. App.1979).[6] Allowing a parent who voluntarily relinquishes his/her parental rights to avoid this right that belongs to the child goes against the overall goal of the child welfare statutory scheme and is in opposition to our well established case law.

One final issue that needs to be addressed, in light of our ruling herein, is whether a circuit court that terminates a parent's parental rights under *W.Va.Code*, § 49–6–5(a)(6), *must* impose a child support obligation on a parent whose parental rights have been terminated. A circuit court's duty to impose a child support obligation upon hearing an abuse or neglect petition is found in *W.Va.Code*, § 49–7–5 [1936]. That statute states, in part:

> If it appears upon the hearing of a petition under this chapter that a person legally liable for the support of the child is able to contribute to the support of such child, the court or judge shall order the person to pay the state department, institution, organization, or private person to whom the child was committed, a reasonable sum from time to time for the support maintenance, and education of the child.

This statute indicates that a circuit court "shall" require a parent to pay support for a child if the parent "is able to contribute to the support of such child." The determination of whether and how much a parent can contribute [7] to the support of the child is a determination the circuit court must make, using the *Guidelines for Child Support Awards* found in *W.Va.Code*, § 48–13–101, *et seq.* [2001]. Specifically, *W.Va.Code*, § 48–13–701, states that "[t]he guidelines in child support awards apply as a rebuttable presumption to all child support orders established or modified in West Virginia." [8] The Guidelines may, however, be disregarded or adjusted to "accommodate the needs of the

---

5. *See Evink v. Evink*, 214 Mich.App. 172, 542 N.W.2d 328, 330 (1995) (stating that "[t]his Court has held that, absent adoption, the obligation to support a child remains with the natural parents").

6. *See* also *In re Jamie Nicole H.*, 205 W.Va. 176, 183, 517 S.E.2d 41, 48 (1999) ("Provisions of shelter and financial support for children is one of the most basic components of parental responsibility."); *Supcoe v. Shearer*, 204 W.Va. 326, 330, 512 S.E.2d 583, 587 (1998) (per curiam) ("The obligation of child support is grounded in the moral and legal duty of support of one's children from the time of birth.").

7. A parent who is unemployed or under-employed can have income attributed to him/her

under appropriate circumstances. *See W.Va. Code*, § 48–1–205 [2008].

8. *W.Va.Code*, § 48–13–701 [2001] states:

> The guidelines in child support awards apply as a rebuttable presumption to all child support orders established or modified in West Virginia. The guidelines must be applied to all actions in which child support is being determined including temporary orders, interstate (URESA and UIFSA), domestic violence, foster care, divorce, nondissolution, public assistance, nonpublic assistance and support decrees arising despite nonmarriage of the parties. The guidelines must be used by the court as the basis for reviewing adequacy of child support levels in uncontested as well as contested hearings.

child or children or the circumstances of the parent or parents" if the court makes specific findings that the use of the Guidelines is inappropriate. *W.Va.Code*, § 48–13–702, [2001].[9] It is possible that in a rare instance an award of child support in the face of relinquishment, voluntary or involuntary, may be found by the circuit court to stand as an immediate obstacle to the imminent permanent placement[10] of a child. In such a case, the court, upon specific findings thereof, may conclude that an award of child support is not in the child's best interests.

 In light of our strong precedent that the best interest of the child is the polar star that guides all matters affecting children, we hold that a circuit court terminating a parent's parental rights pursuant to *W.Va.Code*, § 49–6–5(a)(6), must ordinarily require that the terminated parent continue paying child support for the child, pursuant to the *Guidelines for Child Support Awards* found in *W.Va.Code*, § 48–13–101, *et seq.* [2001]. If the circuit court finds, in a rare instance, that it is not in the child's best interest to order the parent to pay child support pursuant to the *Guidelines* in a specific case, it may disregard the *Guidelines* to accommodate the needs of the child if the court makes that finding on the record and explains its reasons for deviating from the *Guidelines* pursuant to *W.Va.Code*, § 48–13–702, [2001].

Applying this holding to the two appeals presently before us, we turn first to *In re Ryan B.* The circuit court in *Ryan B.* refused to impose a child support obligation on William Matthew B. after he voluntarily relinquished his parental rights, finding that the amendment to *W.Va.Code*, § 49–6–

5(a)(6), compelled such a result. We hereby reverse this ruling and remand the case back to the circuit court below for further proceedings consistent with this opinion.

With regard to *In re: Caitlyn M., Carson M., and Steven M.*, we affirm the circuit court's August 5, 2008, order in part and reverse and remand in part. We affirm the portion of the order in which the court accepted Stanley Ray M.'s voluntary relinquishment and required him to continue paying child support after relinquishing his parental rights. We reverse the circuit court's rulings in paragraphs 32 and 33 of its order, which state:

32. The obligation to pay child support as ordered by the Family Court of Harrison County shall not be altered by this Court, and shall continue as ordered.

33. Any modifications of the amount of child support to be paid lies in the jurisdiction of the Family Court of Harrison County.

 As this Court previously stated in Syllabus Point 3 of *West Virginia Dept. of Health and Human Resources, Bureau for Child Support Enforcement v. Smith*, 218 W.Va. 480, 624 S.E.2d 917 (2005), "When a child is the subject of an abuse or neglect or other proceeding in a circuit court pursuant to Chapter 49 of the *West Virginia Code*, the circuit court, and not the family court, has jurisdiction to establish a child support obligation for that child." As discussed above, in establishing a child support obligation, the circuit court must use the *Guidelines for Child Support Awards* found in *W.Va.Code*,

9. *W.Va.Code*, § 48–13–702(a) [2001] states:
 If the court finds that the guidelines are inappropriate in a specific case, the court may either disregard the guidelines or adjust the guidelines-based award to accommodate the needs of the child or children or the circumstances of the parent or parents. In either case, the reason for the deviation and the amount of the calculated guidelines award must be stated on the record (preferably in writing on the worksheet or in the order). Such findings clarify the basis of the order if appealed or modified in the future.

10. This Court has repeatedly held that children deserve permanency in their lives. *State v. Mi-*

*chael M.*, 202 W.Va. 350, 358, 504 S.E.2d 177, 185 (1998). We observed in *State ex rel. Amy M. v. Kaufman*, 196 W.Va. 251, 470 S.E.2d 205 (1996), that a child deserves "resolution and permanency" in his or her life and deserves the right to rely on his or her caretakers "to be there to provide the basic nurturance of life." 196 W.Va. at 260, 470 S.E.2d at 214. We have consistently held that abuse and neglect cases must be given the utmost attention to ensure their prompt resolution in order to provide permanency for the children involved therein. *See* Syllabus Point 1, *In re Carlita B.*, 185 W.Va. 613, 408 S.E.2d 365 (1991).

48–13–101, *et seq. See* Syllabus Point 5, *WVDHHR v. Smith, supra* [11]. On remand, the circuit court is directed to use the *Guidelines for Child Support Awards* to establish Stanley Ray M.'s child support obligation or make a detailed finding on the record why it is not in the children's best interest to use the *Guidelines* in this case. Furthermore, any modification of the amount of child support to be paid shall be heard by the circuit court, not the family court.

## IV.

### Conclusion

#### A.

##### In re: Ryan B.

For the reasons set forth in this opinion, the judgment of the Circuit Court of Harrison County, rendered on the 16th day of June 2008 is reversed and remanded to the circuit court below for further proceedings consistent with this opinion.

Reversed and Remanded with directions.

#### B.

##### In re: Caitlyn M., Carson M., and Steven M.

For the reasons set forth in this opinion, the judgment of the Circuit Court of Harrison County, rendered on the 5th day of August 2008, is affirmed in part and reversed and in part, and remanded to the circuit court for further proceedings consistent with this opinion.

Affirmed in part, Reversed in part, and Remanded with directions.

Chief Justice BENJAMIN concurs and reserves the right to file a separate opinion.

(Filed Dec. 22, 2009)

BENJAMIN, Chief Justice, concurring.

I write separately to underscore the procedure set forth in Syllabus Point 2 herein, by which a circuit court retains the discretion in

specific cases not to order a terminated parent to pay child support if that is what is in the child's best interests (based on factors such as permanency, etc.). Quite obviously, the overriding principle is to act in the child's best interests. While the majority opinion establishes a presumption that a terminated parent continue to pay child support pursuant to the *Guidelines for Child Support Awards* found in *W.Va.Code* § 48–13–101, *et seq.* (2001), that presumption is subject to the best interests of the child. Should the court determine that the presumption should not be followed in a specific case, the court should make such a finding on the record with its reasons clearly set forth in its order.

---

**11.** Syllabus Point 5 of *West Virginia Dept. of Health and Human Resources, Bureau for Child Support Enforcement v. Smith,* 218 W.Va. 480, 624 S.E.2d 917 (2005), states:

Any order establishing a child support obligation in an abuse or neglect action filed pursuant to Chapter 49 of the *West Virginia Code* must use the *Guidelines for Child Support Awards* found in *W.Va.Code,* 48–13–101, *et seq.*