**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**

**June 19, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re*: **D.H.-1, G.H., B.H., and A.H.**

**No. 16-1123** (Hampshire County 16-JA-23, 16-JA-24, 16-JA-25, & 16-JA-42)

## MEMORANDUM DECISION

Petitioner Father D.H.-2, by counsel Lauren M. Wilson, appeals the Circuit Court of Hampshire County's November 2, 2016, order terminating his parental rights to D.H.-1, G.H., B.H., and A.H.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Joyce E. Stewart, filed a response on behalf of the children in support of the circuit court's order.[2] On appeal, petitioner argues that the circuit court erred by failing to consider less-restrictive alternatives to the termination of his parental rights and in denying his request for post-termination visitation.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because petitioner and one of the children share the same initials, we will refer to the child as D.H.-1 and petitioner as D.H.-2. throughout this memorandum decision.

[2]The guardian's response to this Court, which was filed as a summary response pursuant to Rules 10(e) and 11(h) of the Rules of Appellate Procedure, fails to include a section regarding the status of the child. This information is of the utmost importance to this Court. We refer the guardian to Rule 11(i) of the Rules of Appellate Procedure, which requires "briefs filed by the parties (including the guardian ad litem)" in abuse and neglect appeals to contain a section on the current status of and permanency plans for the children and the current status of the parental rights of all of the children's parents.

In February of 2016, the DHHR received a referral alleging that petitioner sexually abused his girlfriend's niece, E.W., who was then seventeen years old and lived with petitioner, his girlfriend, and their three children since the age of seven.[3] During the investigation, petitioner denied the allegations of sexual abuse. E.W. disclosed to the DHHR interviewer that she was pregnant but that petitioner was not the unborn child's biological father. She further stated that she was afraid of her aunt, A.B., because she was not "taking [her] pregnancy well" and threatened to "kill them all." E.W. claimed that she did not understand A.B.'s reaction to her pregnancy. A.B. told the interviewer that she suspected that petitioner and E.W. were engaging in an inappropriate sexual relationship and admitted that she threatened to "wreck [E.W.'s] car." E.W.'s school nurse told the interviewer that E.W. disclosed to her that petitioner was the biological father of her unborn child and that they had engaged in "consensual sexual intercourse." The interviewer interviewed E.W. a second time wherein E.W. admitted that she and petitioner engaged in sexual intercourse and that he "could be the father of her baby." As a result of the investigation, in March of 2016, the DHHR filed an abuse and neglect petition alleging that petitioner sexually abused E.W. Also in March of 2016, petitioner waived his right to a preliminary hearing and the circuit court ordered that he have no contact with E.W.

In April of 2016, the circuit court held an adjudicatory hearing wherein petitioner failed to appear but was represented by counsel. The circuit court continued the hearing. Petitioner was subsequently arrested and charged criminally with sexual abuse and transporting a minor out of State after he transported E.W. to the State of Virginia and spent the night in a hotel room with her.

In May of 2016, the circuit court held a hearing and found petitioner in contempt of court for violating its prior order prohibiting him from having contact with E.W. Also in May of 2016, the DHHR filed an amended petition adding petitioner's criminal charges and alleging that he was the biological father of E.W.'s unborn child. Subsequently, in June of 2016, E.W. wrote a letter to the circuit court in an attempt to take full responsibility for the sexual intercourse with petitioner and to exonerate him from any responsibility for his actions.

Also in June of 2016, the circuit court held an adjudicatory hearing wherein E.W. testified that she continued to have daily contact with petitioner. She also testified that petitioner asked her to lie about "him being the father of her baby." Petitioner refused to testify and asserted his Fifth Amendment privilege against self-incrimination.[4] The circuit court noted that petitioner's refusal to testify in the abuse and neglect proceedings could result in a "negative inference" against him. At the close of the hearing, the circuit court found that petitioner "had sex with [E.W.] and had sex with her in the home where the minor children, [D.H.-1, B.H., and

---

[3]A.B., petitioner's girlfriend, is the mother of D.H.-1, G.H., and B.H.

[4]The Fifth Amendment of the United State Constitution provides that "[n]o person shall be compelled in any criminal case to be a witness against himself."

G.H.] were." The circuit court also found that petitioner is the father of E.W.'s child, A.H., and that A.H. was the product of an inappropriate sexual relationship.

In October of 2016, the circuit court held a dispositional hearing wherein petitioner presented no evidence or testimony but requested a less-restrictive disposition than the termination of his parental rights. Petitioner also moved the circuit court for post-termination visitation with his children. The circuit court found that petitioner failed to acknowledge or provide a credible explanation as to the allegations of sexual abuse and chose to remain silent throughout the proceedings. The circuit court, therefore, considered petitioner's failure to testify as affirmative evidence of his culpability. The circuit court found that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect and terminated his parental rights to all the children by order dated November 2, 2016.[5] The circuit court also found that post-termination visitation with petitioner would not serve the children's best interests and would be detrimental to their well-being. The circuit court noted that it would reconsider the issue of post-termination visitation upon petitioner's motion when he acknowledged and accepted responsibility for his actions and participated in a sexual offender treatment program as necessary to remediate his actions. It is from this November 2, 2016, order that petitioner appeals.[6]

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether

_____

[5]Petitioner's parental rights to all the children were terminated below. D.H.-1, G.H., and B.H. were all placed with their mother, A.B., after she completed an improvement period and the permanency plan is for the children to remain in her home. A.H. was placed in foster care after an abuse and neglect petition was filed against E.W., her mother. E.W. is currently participating in an improvement period and the permanency plan for A.H. is reunification with the mother.

[6]In regard to child support, this Court has held that,

[a] circuit court terminating a parent's parental rights pursuant to *W.Va. Code,* § 49-6-5(a)(6) [now West Virginia Code § 49-4-604], must ordinarily require that the terminated parent continue paying child support for the child, pursuant to the *Guidelines for Child Support Awards* found in *W.Va. Code,* § 48-13-101, et seq. [2001].

Syl. Pt. 2, in part, *In re Ryan B.*, 224 W.Va. 461, 686 S.E.2d 601 (2009). The dispositional order in the matter below is silent as to petitioner's post-termination child support obligation.

such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating his parental rights without imposing a less-restrictive dispositional alternative. We disagree. West Virginia Code § 49-4-604(a)(6) provides that circuit courts are directed to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(c)(3) provides that no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected exists when "'[t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts[.]" We have also held that "[t]ermination . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected." Syl. Pt. 7, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996).

In the instant case, it is clear that there was no reasonable likelihood that petitioner could have substantially corrected the conditions of abuse or neglect in the near future. Petitioner denied the allegations of sexual abuse and refused to address the issues of abuse.

[I]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable . . . .

*In re Timber M.*, 231 W.Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W.Va. 208, 217, 599 S.E.2d 631, 640 (2004)). Because petitioner failed to acknowledge his abusive conduct, it is clear that the circuit court correctly found that there was no reasonable likelihood the conditions of abuse could be substantially corrected. Moreover, the circuit court also found that termination was necessary for the children's welfare. As previous stated, pursuant to West Virginia Code § 494-604(a)(6), circuit courts are directed to terminate parental rights upon these findings.

Additionally, the Court finds no error in the circuit court's denial of petitioner's motion for post-termination visitation. According to petitioner, because he expressed a desire to visit

with his children, the circuit court erred in denying him post-termination visitation. Again, we do not agree. We have previously held as follows:

> [w]hen parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W.Va. 79, 562 S.E.2d 147 (2002). The record on appeal is devoid of any evidence that continued visitation with petitioner would not be detrimental to the children's wellbeing. As outlined above, petitioner took no steps to correct the conditions of abuse and neglect in the home and continued to deny the allegations of abuse. Based upon the evidence, it is clear that continued contact with petitioner would not be in the children's best interests. As such, we find no error in the circuit court's denial of post-termination visitation below.

Finally, because the record indicates that A.H.'s mother is currently on an improvement period, this Court reminds the circuit court of its duty to establish permanency for the child. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the child within twelve months of the date of the disposition order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedures for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875, Syl. Pt. 6. Moreover, this Court has stated that

[i]n determining the appropriate permanent out-of-home placement of a child under W.Va.Code § 49-6-5(a)(6) [1996] [now West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home can not be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W.Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, the circuit court's November 2, 2016, order is hereby affirmed.

Affirmed.

**ISSUED**: June 19, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker