**STATE OF WEST VIRGINIA**

**FILED**

**November 19, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **M.S.**

**No. 18-0556** (Nicholas County 17-JA-134)

# MEMORANDUM DECISION

Petitioner Mother D.M., by counsel Anthony M. Salvatore, appeals the Circuit Court of Nicholas County's May 24, 2018, order terminating her parental rights to M.S.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Denise N. Pettijohn, filed a response on behalf of the child in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in adjudicating her as an abusing parent, denying her motion for a post-adjudicatory improvement period, terminating her parental rights instead of utilizing a less-restrictive dispositional alternative, and ordering her to pay child support retroactively.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On October 13, 2017, the DHHR filed an abuse and neglect petition alleging petitioner physically abused the child. The incident giving rise to the filing of the petition occurred on October 10, 2017, when it was alleged that petitioner appeared at the child's high school with a belt to "beat" the child for getting in trouble at school. The next day, upon her return to school, it was reported that the child had several bruises and marks on her body which caused her difficulty standing and sitting. The child also had "marks on her arms from [petitioner] grabbing her." According to the DHHR, a medical examination revealed that the child "had welts and bruising on her right lower extremity and buttocks stemming [from] this incident, which evidences physical abuse of the [child]." The fifteen-year-old child reported that she had suffered physical and verbal abuse from petitioner since she was in sixth grade. Petitioner waived her preliminary hearing.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

On November 9, 2017, the circuit court continued the adjudicatory hearing in order for the parties to seek video surveillance footage from the high school. The circuit court ordered petitioner to participate in a psychological evaluation and allowed her to seek an independent psychological evaluation at her own expense. Petitioner was ordered to participate in services, and a multidisciplinary treatment team meeting was scheduled to discuss visitation. On November 17, 2017, the circuit court held an adjudicatory hearing during which the circuit court decided that it would not be in the child's best interest to testify in petitioner's presence during the hearing. The circuit court concluded that it would be appropriate to review, in camera, the child's forensic interview as well as her prior testimony from a domestic violence protective order hearing that was related to the instant matter. During the domestic violence protective order hearing, the child was subjected to cross-examination by petitioner's counsel. There was no objection to the circuit court conducting an in camera review of the child's interview and prior testimony. The DHHR presented evidence of the incident that led to the filing of the petition. The DHHR also presented evidence that the child disclosed to a DHHR worker that petitioner abused her and punished her for "different things." The child showed the DHHR worker bruising on her arm and the worker observed that the bruising was in the shape of a handprint. Petitioner invoked her right to avoid self-incrimination by invoking the Fifth Amendment to the United States Constitution.

Petitioner called the child's pediatrician, Dr. Greenburg, to testify. He did not examine the child following the October 10, 2017, incident and disagreed with the opinions of his partner, Dr. Shank, who examined the child. Dr. Greenberg testified that, in his opinion, to a reasonable degree of medical probability, there was no child abuse. According to Dr. Greenburg, abuse occurred if "you broke the skin, if you burned, if you had fractures, [those] kind[s] of things." However, Dr. Shank testified that he performed a general physical examination of the child and observed a "large, red, swollen area on her right buttock - or right below her right buttock, approximately six to eight inches in diameter, and she had some tenderness over her wrist." At the conclusion of the testimony, the circuit court continued the adjudicatory hearing. At the November 27, 2017, adjudicatory hearing, the circuit court informed the parties that it had reviewed the child's forensic interview and her testimony from the domestic violence protective order hearing. During the forensic interview and testimony, the child stated that she would be "whipped with a belt," and would be called "worthless" and "trash" by petitioner. She stated that she feared that she would be beaten again by petitioner if she told anyone about the abuse. The child testified that the abuse began when she was in sixth grade. The circuit court found that petitioner utilized excessive corporal punishment on the child, which constituted abuse. The circuit court found clear and convincing evidence of the conditions that existed at the time the abuse and neglect petition was filed. Accordingly, petitioner was adjudicated as an abusing parent.

On January 11, 2018, the circuit court held a dispositional hearing. Petitioner moved for a post-adjudicatory improvement period and stated that she would comply with services. However, petitioner denied using corporal punishment on the child. Due to her failure to acknowledge that her conduct was abusive, the DHHR and the guardian objected to petitioner's motion, which the circuit court ultimately denied. During the dispositional hearing, a Child Protective Services ("CPS") worker testified regarding a "massive amount of emails" from petitioner in which petitioner stated that the child was lying and needed to do a "complete turnaround." Petitioner

also blamed the DHHR, the school, the child, and the child's boyfriend for "the entire situation." The CPS worker further testified that petitioner never took responsibility for her actions and could not benefit from services because she did not think that she did anything wrong. A psychologist testified that petitioner "basically quoted the Bible to justify beating her child. That is very indicative that she is not going to change, that she believes that what she did was right, that it was appropriate, and that's very concerning." The circuit court expressed concerns that petitioner continued to place blame on others rather than acknowledging that her conduct was abusive. The dispositional hearing was continued and subsequent hearings were held in January, February, March, and April of 2018. [2]

During the final dispositional hearing on April 27, 2018, the DHHR presented evidence of petitioner's psychological evaluation, which revealed that petitioner was not fit to parent and that any course of treatment would take a minimum of six to nine months. An additional psychological evaluation, obtained independently by petitioner, was admitted into evidence. Both evaluations concluded that petitioner had severe personality symptoms associated with narcissistic personality disorder. The circuit court stated that petitioner exhibited no motivation in the matter other than to attack the parties, her experts, and the child. The circuit court found no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that the termination of her parental rights was in the child's best interests. Ultimately, the circuit court terminated petitioner's parental rights in its May 24, 2018, order.[3] It is from this order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

---

[2]Petitioner did not attend at least two of the hearings due to medical reasons, but was represented by counsel at all hearings.

[3]According to respondents, the child remains in the custody of her nonabusing father.

On appeal, petitioner argues that the circuit court erred in adjudicating her as an abusing parent. In support, petitioner lists twenty-five "uncontestable facts that establish clear error in the [circuit c]ourt's decision to adjudicate her." However, petitioner fails to make any citation to the record to show how these alleged errors were preserved for appeal.[4] Therefore, we will not address the twenty-five individual errors as presented by petitioner.

Moreover, based upon our review of the record, we find that the circuit court had sufficient evidence to adjudicate petitioner as an abusing parent. We have held that

> "W.Va. Code [§] 49-6-2(c) [now West Virginia Code § 49-4-601(i)], requires the [DHHR], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing [evidence].' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the [DHHR] is obligated to meet this burden." Syllabus Point 1, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981).

Syl. Pt. 1, *In re Joseph A.*, 199 W.Va. 438, 485 S.E.2d 176 (1997) (citations omitted). This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *In re F.S.*, 233 W.Va. 538, 546, 759 S.E.2d 769, 777 (2014) (citing *Brown v. Gobble*, 196 W.Va. 559, 564, 474 S.E.2d 489, 494 (1996)). However, "the clear and convincing standard is 'intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt in criminal cases.'" *In re F.S.*, 233 W.Va. at 546, 759 S.E.2d at 777 (quoting *Cramer v. W.Va. Dep't of Highways*, 180 W.Va. 97, 99 n.1, 375 S.E.2d 568, 570 n.1 (1988)).

West Virginia Code § 49-1-201 provides the definitions of "abused child" and "abusing parent." An "abused child" is a child "whose health or welfare is being harmed or threatened by: (A) A parent, guardian or custodian who knowingly or intentionally inflicts, attempts to inflict, or knowingly allows another person to inflict, physical injury or mental or emotional injury, upon the child or another child in the home." Further, an "'[a]busing parent' means a parent, guardian or other custodian, regardless of his or her age, whose conduct has been adjudicated by the court to constitute child abuse or neglect as alleged in the petition charging child abuse or neglect." Id. Here, sufficient evidence of petitioner's abuse of the child existed to adjudicate her as an abusing parent. The record shows that petitioner struck the child with a belt, leaving extensive bruising on the child's lower body. Further, the child disclosed that petitioner had physically and verbally abused her since the child was in sixth grade. Based upon this evidence, we find that the circuit court properly adjudicated petitioner as an abusing parent. Accordingly, petitioner is entitled to no relief.

---

[4]Pursuant to Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure, the argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented in the lower tribunal.

Next, petitioner argues that the circuit court erred in denying her motion for a post-adjudicatory improvement period. In support, she argues that she had the "Constitutional, statutory, biblical, and personal right to use corporal punishment. As such there was nothing to correct." However, petitioner further states that she would not use corporal punishment in the future and would participate in counseling. We do not find this argument persuasive. Additionally, petitioner fails to acknowledge the authority governing improvement periods in abuse and neglect proceedings and fails to cite to any evidence in the record in support of her argument in violation of Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure.

West Virginia Code § 49-4-610(2) provides that the circuit court may grant a parent a post-adjudicatory improvement period if the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period[.]" Additionally, we have stated that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period." *In re M.M.*, 236 W.Va. 108, 115, 778 S.E.2d 338, 345 (2015). We have also held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W.Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W.Va. 208, 217, 599 S.E.2d 631, 640 (2004)).

Here, the record shows that petitioner repeatedly refused to acknowledge that her actions constituted abuse of the child. The record also shows that the child was physically abused by petitioner, as evidenced by red marks on her buttocks from being struck with a belt and a bruise in the shape of a handprint. On appeal, petitioner maintains that her corporal punishment of the child was not abuse and that there were no issues with her parenting that needed to be corrected. The record also shows that petitioner blamed the child, the school, and DHHR for the proceedings. While she contends that she would comply with services, petitioner failed to present evidence to demonstrate that she would be likely to fully participate in a post-adjudicatory improvement period, and, therefore did not meet the applicable burden to receive one. Further, due to petitioner's failure to acknowledge the existence of abuse, an improvement period would have been futile at the child's expense. As such, we find no error.

Further, petitioner argues that the circuit court erred in terminating her parental rights. In support, petitioner asserts that she was accused of "attacking the child" by punishing her for getting into trouble at school and lying. She also argues that the circuit court erred by placing the child's need for permanency over petitioner's parental rights. We disagree.

West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-604(c)(3) provides that a situation in which there is no

5

reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which the abusing parent "ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child[.]" As discussed, the record shows that petitioner physically abused the child in October of 2017 and had been physically and verbally abusive to the child since the child was in sixth grade. However, petitioner maintains that she had the right to use excessive corporal punishment on the child. Due to petitioner's failure to acknowledge that her conduct was abusive, it is clear that there was no reasonable likelihood that she could substantially correct the conditions of abuse and that the termination of her parental rights was in the child's best interests. Petitioner fails to assert any argument to demonstrate that returning the child to her custody would be in the child's best interests. Further, contrary to her argument, the termination of petitioner's parental rights was necessary in order to establish permanency for the child. Additionally, the child stated that she did not want any further contact with petitioner. For these reasons, we find no error in the circuit court's termination of petitioner's parental rights.

Moreover, although petitioner argues that the circuit court should have utilized a less-restrictive dispositional alternative, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W.Va. Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W.Va. Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). Based on the findings set forth above, the termination of petitioner's parental rights was appropriate.

Lastly, petitioner argues that the circuit court erred in ordering her to pay child support, retroactively, months after the child was taken from the home. Again, petitioner fails to provide any authority or citation to the record in support of her argument in violation of Rule 10(c)(7) of the Rules of Appellate Procedure. Further, there is no evidence that petitioner raised this issue below. "'Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n. 20, 524 S.E.2d 688, 704 n. 20 (1999)." *Noble v. W.Va. Dep't of Motor Vehicles*, 223 W.Va 818, 679 S.E.2d 650 (2009). Further, this Court has held that "[a] circuit court terminating a parent's parental rights pursuant to W.Va. Code, § [49-4-604(b)(6)], must ordinarily require that the terminated parent continue paying child support for the child . . . ." Syl. Pt. 2, in part, *In re Ryan B.*, 224 W.Va. 461, 686 S.E.2d 601, 602 (2009). Therefore, petitioner is entitled to no relief.

For the foregoing reasons, we find no error in the decision of the circuit court, and its May 24, 2018, dispositional order is hereby affirmed.

Affirmed.

**ISSUED**:  November 19, 2018


**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice Paul T. Farrell sitting by temporary assignment